UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SALVADOR VARGAS,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 2:25-cv-03751-DJC-CSK

FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

(ECF Nos. 10, 12)

Plaintiff Salvador Vargas seeks judicial review of a final decision by Defendant Commissioner of Social Security denying applications for disability insurance benefits and supplemental security income.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, the Court recommends Plaintiff's motion be GRANTED IN PART and DENIED IN PART, the Commissioner's cross-motion be GRANTED IN PART and DENIED IN PART, and the final decision of the Commissioner be REVERSED and

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) for the issuance of findings and recommendations. See Local Rule 304.

REMANDED.

## I. SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of

review is a non-final agency action). At that point, the claimant may seek judicial review of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II. FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On August 3, 2022 and February 16, 2023, Plaintiff Salvador Vargas completed applications for disability insurance benefits under Title II and Part A of Title XVIII of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act, with an onset date for both applications on May 16, 2022. Administrative Transcript ("AT") 247-250, 251-257. Plaintiff alleged he suffered from depression, anxiety, issues with focusing and completing tasks, and memory. AT 325. Plaintiff's

applications were denied initially and upon reconsideration, and he sought review before an Administrative Law Judge ("ALJ"). AT 53-76, 77-99, 102-103, 133. Plaintiff appeared with a representative at an in-person hearing on December 19, 2024 before an ALJ, where Plaintiff testified about his impairments and a vocational expert ("VE") testified about hypothetical available jobs in the national economy. AT 35-52.

On January 10, 2025, the ALJ issued an opinion finding Plaintiff not disabled. AT 14-29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 16, 2022, the alleged onset date. AT 20. At step two, the ALJ determined that Plaintiff had the following severe impairments: asthma; obesity; anxiety; depression; post-traumatic stress disorder ("PTSD"); and attention-deficit hyperactivity disorder ("ADHD"). *Id*. At step three, the ALJ concluded that none of Plaintiff's severe impairments meet or medically equals the severity of any listing. AT 21-22 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered listings 12.04 (Depressive, bipolar, and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), 12.11 (Neurodevelopmental disorders), and 12.15 (Trauma and stressor-related disorders).[2]

The ALJ concluded that Plaintiff had moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. AT 21-23. The ALJ concluded "Paragraph B" was not satisfied due to Plaintiff's mental impairments not causing at least

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.

"Paragraph C" sets the criteria for "serious and persistent mental disorders," requiring a showing of medically documented history of the existence of the disorder for a period of at least two years. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.c.

two "marked" or one "extreme" limitation. AT 23. The ALJ also examined whether Plaintiff's mental impairments qualify under "Paragraph C." *Id*. The ALJ found that the criteria was not satisfied due to Plaintiff's demonstration of "adequate mental functioning," response to treatment, daily living activities, and lack of hospitalization. *Id*.

The ALJ next found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] cannot work in an environment with concentrated exposure to atmospheric conditions as defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles (DOT). He can understand and remember detailed but not complex instructions. He is limited to no more than frequent interactions with supervisors and coworkers. He is limited to only occasional interactions with the public. He cannot perform work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas. In addition, he can deal only with occasional changes in a routine work setting.

AT 23-24. In making this finding, the ALJ considered Plaintiff's symptoms "to the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence," medical opinions, and prior administrative findings. AT 24.

Evaluating the medical opinions on Plaintiff's mental limitations, the ALJ found the opinions of Dr. Aparna Dixit, Psy.D., Dr. J. Leizer, Ph.D., and Dr. K. Gregg, M.D., to be persuasive. AT 26-27.

Dr. Dixit evaluated Plaintiff during his mental consultative examination on January 25, 2023, and concluded that Plaintiff would have "no more than mild-to-moderate difficulty dealing with the public, only mild difficulty performing detailed and complex tasks and maintain pace and persistence over 2-hour increments, and no difficulty performing simple tasks, interacting with coworkers and supervisors, and maintaining attention and concentration." AT 26 (citing AT 712-15). The ALJ found that this opinion was persuasive because it was supported by Plaintiff's adequate mental functioning during his consultative examination and with Plaintiff's treatment notes. *Id*. (citing AT 591-711, 712-15, 716-23, 771-75, 782-836, 837-60). The ALJ also concluded that the

opinion was consistent with Plaintiff's conservative treatment due to medication and therapy, admitted ability to get along with authority figures, Plaintiff's daily activities, and a "thorough in-person evaluation" of Plaintiff. *Id*. (citing AT 602, 653, 788, 794, 800, 809, 815, 831, 37-52, 325-33, 712-15).

Dr. Leizer evaluated Plaintiff at a state psychological consultation on November 22, 2022. AT 53-76, 77-99. Dr. Leizer limited Plaintiff to short and simple work and concluded that Plaintiff had no more than moderate mental limitations, could handle basic social interaction, and could adapt to infrequent changes and stresses. *Id*. The ALJ concluded that the portion of Dr. Leizer's opinion limiting Plaintiff to short, simple work was not persuasive due to Plaintiff's adequate cognitive functioning. *Id*. (citing AT 591-711, 712-15, 716-23, 771-75, 782-836, 837-60). The ALJ also found that Dr. Leizer's opinion was inconsistent with Plaintiff's daily living activities. *Id*. (citing AT 325-33, 712-15). However, the ALJ determined that the rest of Dr. Leizer's opinion was persuasive because it was supported by Plaintiff's generally adequate mental functioning, effectiveness of Plaintiff's medications, and Plaintiff's admitted ability to get along with authority figures. *Id*. (citing AT 591-711, 712-15, 716-23, 771-75, 782-836, 837-60, 602, 653, 788, 794, 800, 809, 815, 831, 37-52, 325-33).

Dr. Gregg evaluated Plaintiff at a state psychological consultation at the reconsideration level on March 28, 2024. AT 104-09, 110-15. Dr. Gregg opined Plaintiff had no significant mental limitations. *Id*. The ALJ found this opinion to be "largely persuasive" and supported by Plaintiff's generally adequate mental functioning. AT 26-27. The ALJ found this opinion to be consistent with Plaintiff's response to medications, Plaintiff's admitted ability to get along with authority figures, and daily living activities. *Id*. (citing AT 602, 653, 788, 794, 800, 809, 815, 831, 37-52, 325-33, 712-15).

However, the ALJ concluded that Dr. Filip, Plaintiff's personal psychologist, was unpersuasive. AT 27. Dr. Filip's February 2, 2024 report found Plaintiff had a seriously limited to no ability to perform basic mental work-related activities, would be absent from work for more than four days per month, and had marked difficulties in understanding,

remembering, and applying information, concentrating, persisting and maintaining pace, and managing oneself. AT 771-75. The ALJ concluded that Dr. Filip's opinion was unsupported by her own treatment notes, which documented adequate mental functioning. AT 27 (citing AT 591-711, 712-15, 716-23, 771-75, 782-836, 837-60). The ALJ also concluded that Dr. Filip's opinion was unsupported by Plaintiff's response to medication. *Id*. (citing AT 602, 653, 788, 794, 800, 809, 815, 831, 37-52). Further, the ALJ concluded that the opinion was inconsistent with Plaintiff's daily activities and ability to get along with authority figures. *Id*. (citing AT 325-33, 712-15).

Based on the RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work. *Id*. However, at step five, the ALJ determined that Plaintiff was capable of performing other jobs in the national economy, including: (1) Laborer, Stores, DOT # 922.687-058, medium, SVP 2, with approximately 163,389 jobs in the national economy; (2) Kitchen Helper, DOT # 318.687-010, medium, SVP 2, with approximately 125,541 jobs in the national economy; and (3) Counter-Supply Worker, DOT # 319.687-010, SVP 2, with approximately 38,920 jobs in the national economy.[3] AT 28. Thus, the ALJ concluded Plaintiff was not disabled. AT 29. On November 6, 2025, the Appeals Council denied Plaintiff's appeal. AT 1-6. Plaintiff filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment.[4] (ECF Nos. 1, 10, 12.)

## III. ISSUES PRESENTED FOR REVIEW

Plaintiff contends that the ALJ (1) failed to properly evaluate his subjective symptom testimony; (2) lacked internal consistency when analyzing the persuasiveness

---

[3] "Medium" in the ALJ's step-five determination references medium work, as defined by 20 C.F.R. §§ 404.1567(c) and 416.967(c)
"SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." See DOT, App. C, § II, available at 1991 WL 688702.

[4] Plaintiff additionally filed a Notice of Supplemental Authority on September 28, 2026, which is discussed below. (ECF No.14.)

of medical opinion experts; (3) erroneously evaluated the medical opinion testimonies of Dr. Leizer and Dr. Filip; and (4) failed to properly address the statements of Plaintiff's wife. Pl. Mot. 7-25 (ECF No. 10).

Defendant counters that the ALJ (1) properly evaluated Plaintiff's subjective symptom testimony; (2) the RFC is internally coherent; (3) the ALJ properly assessed the medical opinion testimonies of Dr. Leizer and Dr. Filip; and (4) the ALJ did not err in addressing Plaintiff's wife's statements. Def. Mot. at 4-16 (ECF No. 12).

## IV. DISCUSSION

### A. Subjective Symptom Testimony

#### 1. Legal Standards

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds to be not credible and … explain what evidence undermines the testimony." *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Comm. of Soc. Sec. Admin*., 775 F.3d 1090, 1102 (9th Cir. 2014)). Boilerplate statements and general summaries of the evidence, without more, are not enough. *Id*. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Id*. at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. *Lambert*, 980 F.3d at 1277-78.

2. Analysis

Plaintiff contends that the ALJ erred by (1) providing a cursory overview and analysis of Plaintiff's subjective symptom testimony; (2) misconstruing the evidence when determining Plaintiff's cognitive functioning; (3) solely relying on Plaintiff's function report when discussing Plaintiff's daily activities; (4) erroneously concluding that Plaintiff's response to medication was grounds for discounting his subjective symptom testimony; and (5) relying on the observations of agency personnel to discount Plaintiff's subjective symptom testimony. Pl. Mot. at 9-15.

In contrast, Defendant argues that the ALJ properly discounted Plaintiff's subjective symptom testimony by: (1) finding evidence throughout the record that contradicted Plaintiff's testimony; (2) concluding that Plaintiff's medical treatment improved his symptoms; and (3) determining Plaintiff's daily activities undermined his subjective symptom testimony. Def. Mot. at 5-11.

a. *Daily Activities*

The ALJ analyzed Plaintiff's daily activities and concluded that they were not as limited as Plaintiff had testified. Plaintiff alleged that he has difficulty completing basic

household tasks, such as doing laundry, driving, cooking, and personal grooming. AT 44-46. The ALJ referenced Plaintiff's function report indicating that Plaintiff was independent in his personal care, could do chores around the house such as taking out the trash, preparing simple meals, and doing laundry. *Id*. (citing AT 325-333, 712-15.) Daily activities "may be grounds for discrediting the claimant's testimony to the extent that the contradict claims of a totally debilitating impairment." *Smartt v. Kijakazi*, 53 F. 4th 489, 499 (9th Cir. 2022) (quoting *Molina v. Astrue*, 674 F. 3d 1104, 1113 (9th Cir. 2012). Thus, the Court concludes the ALJ properly evaluated Plaintiff's daily activities outlined in his function reports and that there was substantial evidence to conclude that Plaintiff's daily activities were clear and convincing reasons to discount his subjective symptom testimony.

b. *Conservative Treatment*

In discounting Plaintiff's subjective symptom testimony based on conservative treatment, the ALJ briefly references that Plaintiff had a favorable response to psychotropic medication during the adjudicative period, which improved Plaintiff's focus and reduced his depression and anxiety. *Id*. (citing AT 602, 653, 788, 794, 800, 809, 815, 831, 37-52). The ALJ also found that Plaintiff had not required psychiatric hospitalization since 2022. *Id*. (citing AT 591-711, 712-15, 716-23, 782-836, 837-60).

"It is error to reject a claimant's testimony because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F. 3d 995, 1017 (9th Cir. 2014). "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Id*. (citing *Ryan v. Commissioner of Social Sec*., 528 F. 3d 1194 1200-01 (9th Cir. 2008)). The Court finds that the ALJ erred in concluding that such treatment undermined Plaintiff's disability. Here, even though the ALJ references several reports between 2022 to 2024, which document improvement in concentration due to Plaintiff's use of Adderall, they also show that he was experiencing ongoing bursts of anger and depression while being treated. For example, while a report on September 22, 2022 indicated that

Plaintiff's depression was improving, he described himself at a "stand still," and "feeling stuck." AT 602. Plaintiff also described ongoing irritation and anxiety that "comes and goes," despite feeling improvement by medication. AT 653, 788, 815. While Plaintiff described improvement in his concentration due to Adderall, he described the medication as making him "mad" and that it "slows him down." AT 800. The record reveals that Plaintiff's symptoms waxed and waned over the adjudicative period, which is insufficient to reject Plaintiff's testimony. *See Garrison*, 759 F. 3d, at 1017. Additionally, "hospitalization is not required to show that mental health conditions such as PTSD… and anxiety are disabling from employment." *Schiffiano v. Saul*, 799 Fed. Appx. 473, 476 (9th Cir. 2020). Therefore, the Court concludes that substantial evidence does not support the finding that Plaintiff's response to medication was a clear and convincing reason to discount his testimony.

c. *Objective Medical Evidence*

The ALJ's remaining reason for discounting Plaintiff's subjective symptom testimony is due to a lack of consistency with the objective medical evidence. AT 24-26. The ALJ acknowledged Plaintiff's wife, Stephanie Vargas, had prepared a third-party function report which "largely mirrored" Plaintiff's allegations. AT 24 (citing AT 338-346). The ALJ acknowledged that Plaintiff had a "limited fund of insight," and showed symptoms of depression, anxiety, and could be restless and withdrawn, but showed normal thought process, thought content, intact concentration and cognition, good impulse control, and grooming. AT 25 (citing AT 591-711, 716-23, 771-75, 782-836, 837-60). The ALJ also referenced a mental consultative examination which showed similar attributes, and that Plaintiff denied suicidal and homicidal ideations during the adjudicative period. *Id*.

The Court finds the ALJ erred in his analysis of the objective evidence. The ALJ's examination does not explain how these records undermine Plaintiff's testimony and instead provides a boilerplate conclusion that Plaintiff's allegations are "not entirely consistent with the evidence." AT 24. This is not sufficient to meet the minimal

requirements for assessing credibility, and the Court concludes the ALJ erred in his treatment of the objective medical evidence. *See Lambert*, 980 F.3d at 1277-78. The Court need not address Plaintiff's other arguments.

An ALJ failing to specify their reasons for finding claimant testimony not credible is typically not harmless error. *See Treichler*, 775 F. 3d at 492. Therefore, the Court recommends remanding for further administrative proceeding and granting Plaintiff summary judgment on this issue.

**B. RFC Formulation**

1. Legal Standards

A claimant's residual functional capacity assessment is a determination of what the claimant can still do despite his or her physical, mental and other limitations. 20 C.F.R. § 404.1545(a). The RFC is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In determining a claimant's RFC, an ALJ must assess all the evidence (including the descriptions of limitation, and medical reports) to determine what capacity the claimant has for work despite the impairment(s). 20 C.F.R. § 404.1545(a).

2. Analysis

Plaintiff argues the ALJ erred in assessing Plaintiff's cognitive limitations in the RFC formulation by finding his status and cognitive function, improvement with therapy and medication, ability to get along with others, and daily living activities were substantial evidence to support both a "moderate limitation" and "no limitations" in Plaintiff's mental functioning. Pl. Mot. at 15. Defendant argues that the ALJ appropriately reconciled competing views into a coherent RFC and that none of the medical opinion testimonies opined anything greater than a moderate limitation. Def. Mot. at 11-12.

In support of his theory of error, Plaintiff cites *Geno T. v. Commissioner of Social Security*, 2024 WL 3517463 (W.D.N.Y. July 24, 2024). In *Geno T.*, the ALJ created a mental RFC after having rejected the opinions of each state agency medical consultant

for failing to find a severe mental impairment. *Geno T.,* 2024 WL 3517463, at *2. The ALJ believed Plaintiff had a severe antisocial personality disorder and that the state medical opinion experts did not find a severe impairment. *Id*. Further, the ALJ found the opinions conflicted with Plaintiff's treatment history and history of subjective complaints about his mental limitations. *Id*. However, the ALJ later rejected the most restrictive medical opinion testimony, which found Plaintiff was markedly limited in making appropriate decisions for being reliant on Plaintiff's subjective complaints and conflicting with Plaintiff's treatment history. *Id*. The reviewing district court found that it was unable to discern how the ALJ arrived at this conclusion and that remand was warranted. *Id*. at *2-3.

Specifically, Plaintiff argues that the ALJ erred in concluding that the opinions of Dr. Dixit, Dr. Leizer, and Dr. Gregg were persuasive, because the opinions conflict with each other similarly to *Geno T*. and are therefore not supported by substantial evidence. Pl. Mot. 15-17. For example, Dr. Dixit opined that Plaintiff had a "mild to moderate" difficulty with dealing with the public and Dr. Gregg had no limitations on Plaintiff's ability to interact with others. AT 26-27. The ALJ found that both opinions were supported by Plaintiff's "generally adequate mental functioning." AT 26. Separately, Dr. Dixit opined Plaintiff had a mild limitation performing complex tasks and maintaining pace and persistence, Dr. Leizer concluded that Plaintiff had a moderate limitation in understanding, remembering, or applying information, and Dr. Gregg found Plaintiff had no limitation in understanding, remembering, and applying information and a mild limitation in concentrating, persisting, or maintaining pace. *Id*. Plaintiff argues that these three conclusions cannot be drawn from the same finding of Plaintiff's conservative treatment to be helpful. Pl. Mot. 17. Plaintiff also argues that the ALJ's reliance on Plaintiff's daily living activities could not support Dr. Dixit's findings of mild-to-moderate difficulty in dealing with the public, and Dr. Gregg's finding of no significant mental limitations. *Id*. at 16-17.

The Court concludes that while there is some variance between the opinions,

*Geno T*. is distinguishable. Here, none of the present opined limitations are marked or extreme. In *Geno T.,* the ALJ found the medical opinions of the state experts were unpersuasive due to evidence that the plaintiff's mental limitations were more extreme but then rejected a medical opinion that would have given the plaintiff the most restrictive limitations based on the same evidence. *See Geno T.,* 2024 WL 3517463, at *2. Here, because the ALJ determined Plaintiff does not suffer from a marked or extreme limitation, and none of the conclusions in the ALJ's evaluation of medical opinion testimony suggest finding otherwise, the Court concludes the ALJ has built "an accurate and logical bridge from the evidence to [his] conclusion." *Scott v. Barnhart*, 297 F. 3d 589, 595 (9th Cir. 2002) (citing *Steele v. Barnhart*, 290 F. 3d 936, 941 (7th Cir. 2002)). Thus, the Court recommends granting summary judgment in favor of Defendant and recommends denying summary judgment for Plaintiff on this issue.

**C. Medical Opinion Testimony**

1. <u>Legal Standards</u>

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC" (residual functional capacity). *Rounds v. Comm'r Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant

objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." *Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022) (citing *Hardy v. Commissioner*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

2. <u>Analysis</u>

a. *Dr. Leizer*

Plaintiff argues that the ALJ erred in examining Dr. Leizer's medical opinion testimony. Pl. Mot. 18-20. While Plaintiff does not concede the ALJ's supportability and consistency analysis as sufficient, Plaintiff centers most of his argument on the ALJ misstating Dr. Leizer's opined limitations, which Plaintiff asserts resulted in harmful error. *Id*. at 19. Plaintiff argues that the ALJ's misstatement of Dr. Leizer's opinion concerned the doctor's limitation to "short and simple work." *Id*. (citing AT 26). Plaintiff argues that Dr. Leizer's restriction was actually "'simple and infrequent changes and stresses,' not only in work duties, but the work setting." *Id*. (citing AT 72). While Plaintiff contends that the ALJ reasonably extended the "short and simple" restriction to Plaintiff's work duties, the ALJ erred in applying the restriction to Plaintiff's work setting. *Id*. (citing *Stiffler v. O'Malley*, 102 F. 4th 1102, 1108-10 (9th Cir. 2024)). Specifically, Plaintiff argues that the ALJ erred by limiting Plaintiff to "only occasional changes in a routine work setting," which he argues is categorically different from infrequent. *Id*. (citing AT 24).

Conversely, Defendant argues that the differences in terminology is immaterial. Def. Mot. at 13 (citing SSR 83-10, available at 1983 WL 132151, at *5-6). The Court agrees. SSR 83-10 defines "occasionally" as "occurring from very little up to one-third of the time," and defines "frequently" as "occurring from one-third to two-thirds of the time." SSR 83-10, available at 1983 WL 132151, at *5-6. It follows that for something to be *infrequent*, it would need to occur less than a third of the time according to SSR 83-10. Because there appears to be little difference between the two disputed terms, the Court finds Plaintiff's argument unavailing.

Further, the Court finds that the ALJ properly evaluated Dr. Leizer's opinion according to the supportability and consistency factors. A summary of Dr. Leizer's opinion can be found above. The ALJ found the portion of Dr. Leizer's opinion that limited Plaintiff to short, simple work to be unsupported by what the ALJ deems "adequate cognitive functioning" documented in Plaintiff's medical records. AT 26 (citing AT 591-711, 712-15, 716-23, 771-75, 782-836, 837-60). Additionally, the ALJ found the portion of Dr. Leizer's opinion to be inconsistent with Plaintiff's daily living activities. *Id*. (citing AT 457-535, 712-15). The ALJ later found the remainder of the opinion to be persuasive because it was supported by Plaintiff's adequate mental functioning and consistent with Plaintiff's improvement with medication and Plaintiff's ability to get along with authority figures. *Id*. (AT 591-711, 712-15, 716-23, 771-75, 782-836, 837-60, 602, 653, 788, 794, 800, 809, 815, 831, 37-52, 325-33).

In sum, the ALJ referenced objective medical evidence in finding Dr. Leizer's opinion related to "short, simple work," lacked supportability but that the remainder of the opinion was supported by records demonstrating adequate mental functioning. Further, the Court finds that even though the ALJ lacked substantial evidence to conclude that Plaintiff's impairments improved with medication, the ALJ also referenced Plaintiff's ability to get along with authority figures as additional support for upholding the opinion. Therefore, the Court concludes that the ALJ did not err in finding the portion of Dr. Leizer's opinion that limited Plaintiff to short, simple work unpersuasive and finding the

remainder of the opinion persuasive. The Court recommends granting Defendant summary judgment and recommends denying Plaintiff summary judgment on this issue.

b. *Dr. Filip*

Plaintiff also contests the ALJ's handling of the opinion of Dr. Filip. Pl. Mot. at 20-23. Plaintiff argues that the ALJ erred in finding Dr. Filip's opinion unpersuasive for disregarding a February 2024 mental health questionnaire where Plaintiff was found to have "marked" limitations in understanding, remembering, or applying information; concentration, persistence, and maintaining pace; and adapting and managing oneself. Pl. Mot. 20 (citing AT 774). Plaintiff alleges the report identified him as having a major depressive disorder, insomnia, PTSD, and ADHD. *Id*. at 21 (citing AT 771). Plaintiff argues the ALJ erroneously found Dr. Filip's opinion to be internally inconsistent because of Plaintiff's "generally adequate mental functioning," and "helpfulness of [his] psychotropic medications and psychotherapy." *Id*. (citing AT 27). Plaintiff also contests the ALJ failed to resolve conflicts with other evidence contained in Dr. Filip's record, such as support for Plaintiff's future absenteeism. *Id*. at 22 (citing AT 775).

Defendant counters that Dr. Filip's treatment notes were internally inconsistent, which supports a finding of a lack of supportability. Def. Mot. at 14. Further, Defendant argues that the ALJ need not discuss every portion of Dr. Filip's report and that the ALJ is specifically tasked with reaching conclusions based on medical evidence. *Id*. (citing *Kitchen v. Kijakazi*, 82 F. 4th 732, 739 (9th Cir. 2023)).

A summary of Dr. Filip's medical opinion testimony can be found above. The ALJ found Dr. Filip's opinion testimony unpersuasive because it was unsupported by Dr. Filip's treatment notes, which demonstrated "adequate mental functioning." AT 27 (citing AT 591-711, 716-23, 782-836, 837-60). The ALJ further found that Dr. Filip's medical opinion testimony was unsupported by Plaintiff's conservative treatment and psychotherapy, which was also described in Dr. Filip's treatment notes. *Id*. (citing AT 602, 653, 788, 794, 800, 809, 815, 831, 37-52). The ALJ also found the opinion inconsistent with Plaintiff's "adequate mental functioning" during the consultative

examination, Plaintiff's ability to get along with authority figures, and daily living activities. *Id*. (citing AT 325-333, 712-15).

In sum, the ALJ identified evidence within Dr. Filip's consultative examination to find that the medical opinion testimony lacked supportability. Specifically, the ALJ references notes that indicate cooperative behavior, good eye contact, normal thought content, intact cognition, memory, good impulse control, and grooming habits. AT 25 at (591-711, 716-23, 771-25, 782-836, 837-60). The Court additionally finds that even though the ALJ lacked substantial evidence to determine whether Plaintiff's symptoms improved with treatment, there was substantial evidence to determine a finding of inconsistency through Plaintiff's daily living activities. The ALJ's analysis also references Plaintiff's admission regarding his behavior around authority figures. Therefore, the Court concludes that the ALJ did not err in discounting Dr. Filip's medical opinion testimony. The Court recommends granting Defendant summary judgment and recommends denying Plaintiff summary judgment on this issue.

**D. Lay Opinion Testimony**

1. Legal Standards

The regulations require an ALJ to "consider" all evidence in the record. 20 C.F.R. § 404.1520c(d). Under the 2017 amendments to regulations, an ALJ is "not required to articulate how [they] considered evidence from nonmedical sources[.]" 20 C.F.R. § 404.1520c(d). However, the Ninth Circuit has recently found that the 2017 amendments do not dispense with the requirement that the ALJ give germane reasons for discounting lay opinion testimony. *See Fain v. Bisignano*, 2026 WL 2795427, at *5-6 (9th Cir. Sept. 18, 2026).

2. Analysis

When evaluating Plaintiff's subjective symptom testimony, the ALJ acknowledged that Plaintiff's wife completed a third-party function report that "largely mirrored" Plaintiff's allegations. AT 24. The ALJ later stated he considered the evidence. *Id*.

Plaintiff contends the ALJ erred by failing to analyze Plaintiff's wife's lay witness

testimony. Pl. Mot. at 23-25. Conversely, Defendant argues that under the new regulations applicable to cases filed on or after March 27, 2017, the ALJ is not required to articulate reasons for discounting lay testimony. Def. Mot. at 15. Further, Defendant argues that because the ALJ acknowledged that Plaintiff's wife's testimony was duplicative of Plaintiff's own testimony, the reasons for discounting Plaintiff's allegations were applicable to his wife. *Id*. at 15-16 (citing *Molina*, 674 F. 3d at 1122; *Valentine v. Comm'r Soc. Sec*., 574 F. 3d 685, 694 (9th Cir. 2009)).

Because the Court has concluded that the ALJ erred in evaluating Plaintiff's subjective symptom testimony, it was improper to reject Plaintiff's wife's third party function report based on it being consistent with Plaintiff's testimony. *See Collard v. Bisignano*, 2026 WL 2856751, at *4 (W.D. Wash. Sept. 23, 2026) (finding an ALJ's analysis failed under the germane reasons standard in similar circumstances). Thus, the Court concludes the ALJ erred in its evaluation of lay testimony and recommends granting summary judgment in favor of Plaintiff on this issue.

**V. CONCLUSION**

In conclusion, the Court grants summary judgment in favor of Plaintiff on the following issues, finding (1) the ALJ erred in discounting Plaintiff's subjective symptom testimony; and (2) the ALJ erred in rejecting Plaintiff's wife's lay opinion testimony. The Court grants summary judgment in favor of Defendant on the following issues, finding (1) the ALJ's analysis of the medical opinion experts was internally consistent; and (2) the ALJ properly evaluated the medical opinion testimonies of Dr. Leizer and Dr. Filip.

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler,* 775 F.3d, at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether Plaintiff was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed but must sufficiently analyze whether there are clear and convincing reasons for discrediting Plaintiff's testimony and whether there are germane reasons for discounting Plaintiff's wife's lay opinion testimony. The Court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The Court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find Plaintiff disabled during the entirety of the relevant period; may find Plaintiff eligible for some type of closed period of disability benefits; or may find that Plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

## FINDINGS AND RECOMMENDATIONS

Accordingly, the Court RECOMMENDS:

1. Plaintiff's motion for summary judgment (ECF No. 10) is GRANTED IN PART and DENIED IN PART;
2. The Commissioner's cross-motion (ECF No. 12) is GRANTED IN PART and DENIED IN PART;
3. The final decision of the Commissioner is REVERSED and REMANDED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: October 15, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, varg.3751.25.ss.msj